J. C. LOWDERMILK et als v. A. J. CORPENING et als.

*Homestead—Execution—Reversionary Interest—Judgment Lien.*

1. The homestead law is not void as to debts contracted before its adoption, and is inoperative only when such debts could not otherwise be collected out of the debtor's property.

2. The homestead should be allotted when executions are issued on such debts, and the excess first applied to the payment of the execution, and if sufficient for that purpose the debtor should be allowed to retain his homestead.

3. Where an execution issued on such debt, and the sheriff sold the real property of the debtor subject to the homestead, the purchaser acquired the reversion after the termination of the homestead.

4. The Act of the 25th of March, 1870, which prohibits the sale of the reversionary interest in land charged with the homestead exemption, cannot deprive a creditor of a vested right acquired by docketing his judgment before the act was passed.

5. A judgment has no lien on land in a county in which it has not been docketed.

6. The lien of a judgment cannot be continued by subrogation when the judgment has been satisfied, nor against a party who acquired rights before the action in which the judgment of subrogation was rendered was begun, nor can such subrogation impair the rights of persons not parties to the action.

(*Barrett* v. *Richardson*, 76 N. C., 429; *Wyche* v. *Wyche*, 85 N. C., 96; *Burton* v. *Spiers*, 87 N. C., 87; *Albright* v. *Albright*, 88 N. C., 238; *McDonald* v. *Dixon*, 85 N. C., 248, cited and approved.  *Hill* v. *Kessler*, 63 N. C., 437, and *Edwards* v. *Kearsey*, 74 N. C., 241; Ibid., 75 N. C., 409, commented on).

CIVIL ACTION, tried before *Gilmer, Judge,* at Fall Term, 1884, of BURKE Superior Court. .

There was a judgment for the plaintiffs and the defendants appealed.

*Messrs. J. T. Perkins, Walter Clark* and *Batchelor & Devereux* for the plaintiffs.

*Messrs. Reade, Busbee & Busbee* for the defendants.

SMITH, C. J.   The controversy .in this case is in respect to the plaintiff's claim of ownership of the land described in his complaint.   By consent, a trial by jury was waived and the court allowed to find the facts instead, it being agreed that in the event of the plaintiff's recovering judgment, his damages should be one hundred dollars.

The land formerly belonged to Archibald Kincaid, against whom judgments, on debts contracted previous to the adoption of the Constitution in 1868, were recovered and docketed in the Superior Court of Burke on January 4th, 1870.   The land was sold under executions issued thereon, subject to the defendant's right of homestead therein, on April 16th of the same year and conveyed to the plaintiff.

The defendant's title is also derived from the same source and is as follows :

In 1866 the legatees of Robert Kincaid recovered judgment in an action against the said Archibald and John Kincaid, on which issued a writ of *fieri facias* that was levied on their lands, the tract in dispute being included, in August, 1866, and returned with an endorsement of the levy, but without further action.

The sale was arrested by an injunction obtained by the debtor, to secure which they gave an indemnifying bond with the defendant A. J. Corpening as surety.   The cause in which the restraining order was granted was removed to the Supreme Court, where it was overruled and judgment also entered against the parties to the injunction bond.   Of this judgment, the said Corpening, as surety, paid the sum of two thousand dollars and fifty cents.

At Spring term of 1871 of the Superior Court of Caldwell, Corpening brought his suit against the said Archibald Kincaid and others praying to be substituted to the rights of the judgment creditors, to whom, in consequence of his liability as a surety in the injunction bond, he had paid the sum stated, and this was so adjudged in the said Superior Court in 1873. This judgment was never docketed in the Superior Court of Burke wherein the land lies, but an execution issued to the sheriff of the county last named, under which the premises were sold in the year 1874 to the present defendant. Corpening brought his action, in 1875, against his judgment-debtor to recover possession of the land, and the cause being removed to the Supreme Court by appeal, it was then determined that the plaintiff was entitled to recover and hold said land during the life-time of said Archibald, and the continuance of his homestead right, and it was left undecided as to the person in whom the estate thereafter had vested. This inquiry is to be solved in the present suit between the contending purchasers from the sheriff, the said Archibald having died, leaving no wife or minor children.

Upon the foregoing facts found by the judge, he rendered judgment that the plaintiffs recover possession of the premises and one hundred dollars damages for the defendants' wrongful withholding. The appeal of the defendants is from this ruling.

(1). The plaintiffs, by virtue of their purchase at the sheriff's sale in 1870 and his deed to them, undoubtedly acquired the estate of the debtor, leaving him to occupy and enjoy the same during the period of exemption provided in the constitution. When the sale took place, the rulings in this State from the case of *Hill* v. *Kessler*, 63 N. C., 437, decided the next year after the adoption of the new constitution, had been consistent and uniform, that no distinction could be made between debts contracted before and after that time, and that the homestead right was paramount to both and could be asserted against each. It was so held in *Edwards* v. *Kearsey* decided at the January term, 1876, and again at the term following, and reported in 74 N. C., 241,

and 75 N. C., 409. Such was understood to be the law, and it was acted on as such, until the ruling was reversed in the Supreme Court of the United States on the removal of the cause to that court. 96 U. S., 595.

The sale was, therefore, conducted in recognition of the law as interpreted in this court, without dissent from the debtor, and in a manner that was favorable to him. The estate that was sold and conveyed by the sheriff, and so described in his deed, was in subordination to the homestead or exemption claim, and no other or greater passed to the plaintiff. This is decided in *Barrett* v. *Richardson*, 76 N. C., 429, and again in *Wyche* v. *Wyche*, 85 N. C., 96, in both of which cases the debts antedated the constitution, and the sale was made on similar reservations of the debtor's estate.

What reason can be suggested for denying to a creditor, whether becoming such under an old or new contract, a right to recognize the debtor's exemption, when he might have proceeded in disregard of it? or why should the one be disabled from doing what another may do in the effort to collect his demand against an insolvent debtor? Indeed, the homestead exemption is not void as to either class of debts, and it only becomes so as to such as were contracted before it became a law, when otherwise the latter could not be collected out of other property of the debtor. Such other property ought first to be appropriated, and, if sufficient, the debtor allowed to avail himself of the benefit of the constitutional provision made in his behalf. *Burton* v. *Spiers*, 87 N. C., 87; *Albright* v. *Albright*, 88 N. C., 238.

But this sale is impeached as in conflict with the act of March 25th, 1870, which prohibits the sale of the debtor's reversionary interest in land charged with the homestead exemption.

The statute was passed in furtherance of the policy of securing a home to the insolvent and his family, and to leave them undisturbed in their possession during the limited period.

It never looked to the curtailment of his privileges by forbidding the creditor to let him have what the Constitution allows,

and forcing an out and out sale of the premises. This meaning is apparent from the concluding clause of the first section, which suspends the running of the statute of limitations against the debt while the exemption remains in force. *Bat. Rev.*, ch. 55, sec.26 ; *McDonald v. Dickson*, 85 N. C., 248.

But another answer to this contention is furnished in the fact that the lien of the judgment under which the plaintiffs bought, attached and conferred a right to sell and appropriate the proceeds *before the act was passed,* and this right *could not be divested or impaired* by any of its provisions. This results, and for stronger reasons, from the principle established in *Edwards v. Kearsey, supra.*

The appellant further insists that the lien created by the levy of the execution in 1866 is preserved and continued in force by virtue of the judgments of subrogation rendered in 1873 in Caldwell Superior Court, and that the sale under it supplants that made in 1870 to the plaintiffs. To the maintenance of this proposition the obstacles are insuperable, some of which we will mention.

1. The judgment upon which the *fieri facias* issued, has been paid and satisfied in full.

2. The plaintiff acquired title before the institution of the action in which that judgment of substitution was rendered.

3. It was not docketed in Burke county and could have no operation upon lands therein.

4. The substitution only binds the parties in that action, and cannot be permitted to impair the legal rights acquired by other creditors of the common debtor to pursue his estate and subject it to their demands.

These considerations fully meet and dispose of any claim to priority derived from these proceedings made on behalf of the defendants. There is no error and the judgment must be affirmed, and it is so ordered.

No error.                                          Affirmed.